IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOYCE DAVIS, | ) | CASE NO. 1:15 CV 2111 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Joyce Elizabeth Davis under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 13. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 6.

[6] ECF # 12.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

### A. Background facts and decision of the Administrative Law Judge ("ALJ")

Davis who was 53 years old at the time of the administrative hearing,[11] is a high school graduate with one year of college.[12] Her past employment includes working as an administrative assistant for the State of Ohio from 1988-2011.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Davis had the following severe impairments: back pain, neck pain, multiple sclerosis, and an adjustment disorder with mixed anxiety and depressed mood (20 CFR 404.1520(c)).[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Davis's residual functional capacity ("RFC"):

---

[7] ECF # 20 (Commissioner's brief); ECF # 17 (Davis's brief).

[8] ECF # 20-1 (Commissioner's charts); ECF # 17-1 (Davis's charts).

[9] ECF # 16 (Davis's fact sheet).

[10] ECF # 22.

[11] ECF # 16 at 1.

[12] *Id.*

[13] *Id.*

[14] Transcript ("Tr.") at 55.

-2-

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry and push and/or pull 20 pounds occasionally and 10 pounds frequently; sit, stand and/or walk for 6 hours each out of an 8-hour workday. She can climb, stoop, crouch, kneel, and crawl occasionally. She is precluded from exposure to moving machinery and unprotected heights and from concentrated exposure to heat. Mentally, the claimant retains the ability to maintain attention and concentration for 2-hour segments over an 8 hour work period. The claimant is able to respond appropriately to supervisors and co-workers, and able to adapt to simple changes and avoid hazards in a setting without strict production quotas.[15]

Based on that residual functional capacity, the ALJ found that Davis acquired skills from past relevant work as am administrative assistant that are transferrable to other occupations.[16]

Relying on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Davis could perform.[17] The ALJ, therefore, found Davis not under a disability.[18]

---

[15] *Id.* at 59.

[16] *Id*. at 67.

[17] *Id*. at 67-68.

[18] *Id*. at 68.

**B.     Issues on judicial review**

Davis asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Davis presents the following issues for judicial review:

- Whether the ALJ erred when he found that Ms. Davis was capable of performing a significant number of jobs when the evidence demonstrates that the symptoms from Ms. Davis' severe multiple sclerosis preclude her from performing the exertional requirements of light work activity.[19]

- Whether the ALJ erred when he failed to give sufficient evidentiary weight to the opinion of Ms. Davis' neurologist, Dr. Rensel, who opined that Ms. Davis would require extra unscheduled breaks throughout the work day.[20]

For the reasons set forth below, the Court finds that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, should be remanded.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is

---

[19] ECF #17 at 1.

[20] *Id*.

-4-

>limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
>The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

*2.  Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[24]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[25]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[28] Although the treating

---

[24] 20 C.F.R. § 404.1527(d)(2).

[25] *Id.*

[26] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[27] *Id.*

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

-6-

source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[31]

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[33] The court noted that the regulation expressly contains a "good reasons" requirement.[34] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

---

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[31] *Id.* at 535.

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[33] *Id.* at 544.

[34] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[35]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[36] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[37] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[38] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[40] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[41] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[35] *Id.* at 546.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[41] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[42] *Blakley v. Commissioner of Social Security*,[43] and *Hensley v. Astrue*.[44]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[45] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[46] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[47] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[48]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[49] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the

---

[42] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[44] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

[47] *Id.*

[48] *Rogers*, 486 F.3d at 242.

[49] *Gayheart*, 710 F.3d at 376.

standards for controlling weight set out in the regulation.[50] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[51] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[52] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[53]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[54]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[55] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Rogers*, 486 F.3d 234 at 242.

giving those opinions controlling weight.[56] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[57] or that objective medical evidence does not support that opinion.[58]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[59] The Commissioner's *post hoc* arguments on judicial review are immaterial.[60]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

---

[56] *Blakley*, 581 F.3d at 406-07.

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[59] *Blakley*, 581 F.3d at 407.

[60] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[61]

- the rejection or discounting of the weight of a treating source without assigning weight,[62]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[63]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[64]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefore,[65] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[66]

The Sixth Circuit in *Blakley*[67] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to

---

[61] *Blakley*, 581 F.3d at 407-08.

[62] *Id.* at 408.

[63] *Id.*

[64] *Id.* at 409.

[65] *Hensley*, 573 F.3d at 266-67.

[66] *Friend*, 375 F. App'x at 551-52.

[67] *Blakley*, 581 F.3d 399.

-12-

support the ultimate finding.[68] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[69]

In *Cole v. Astrue*,[70] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[71]

**B.     Application of standards**

This case is narrowly focused on the issue of whether the RFC is flawed in stating that Davis could perform light work with some additional restrictions.[72]  In that regard, Davis argues that the ALJ erred by adopting the 2013 functional capacity opinion of a state agency reviewing physician and giving little weight[73] to a 2014 functional capacity opinion by Dr. Mary Rensel, a treating neurologist, which included a limitation for several unscheduled

---

[68] *Id.* at 409-10.

[69] *Id.* at 410.

[70] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[71] *Id.* at 940.

[72] Tr. at 59.

[73] Tr. at 61.

-13-

daily breaks. Both parties appear, without discussion, to consider Dr. Rensel to be a treating source[74] as did the ALJ.[75] In that regard, the treatment records attached here show only that Dr. Rensel conducted a single examination of Davis on April 16, 2014,[76] and then completed a functional limitations opinion on May 13, 2014 that was apparently not associated with another, separate examination.[77] Davis suggests that the functional opinion was done the same day as the examination, but the record does not support that view.[78]

Magistrate Judge McHargh in *Salter v. Commissioner*[79] addressed the situation of whether a neurologist who treated a multiple sclerosis patient only once before later completing a residual functional capacity opinion was properly considered to be a treating source.[80] After reviewing the foundation in the regulations and the case law for determining when a medical provider may be deemed a treating source, Magistrate Judge McHargh found

---

[74] ECF # 17, attachment at 1 (Davis chart); ECF # 20, attachment at 10 (Commissioner's chart).

[75] Tr. at 61.

[76] Tr. at 612-22.

[77] Tr. at 609-11.

[78] ECF # 17 at 7.

[79] *Salter v. Commissioner*, No.4:12-CV-888, 2015 WL 1880393 (N.D.Ohio April 24, 2015).

[80] *Id*. at *7.

that one examination leading to the later preparation of a functional capacity opinion was insufficient to render the physician a treating source as concerns a multiple sclerosis patient.[81]

That said, the situation here is not as clear cut. In particular, although the transcript contains treatment notes from only one examination of Davis by Dr. Rensel in 2014, the transcript contains three notations from June and August 2013 by a Mansfield physical therapist identifying Dr. Rensel as the referring physician[82] as well as a January 2013 notation from the Cleveland Clinic rehabilitation department also identifying Dr. Rensel of the Cleveland Clinic as the referring physician.[83]

Thus, although the record does not contain treatment notes or office visit records from Dr. Rensel apart from the single examination of April 2014, the evidence of referrals for other therapies by Dr. Rensel on multiple occasions in 2013 is sufficient to infer the existence of a treating relationship between Davis and Dr. Rensel extending over several years and multiple visits. I will therefore consider Dr. Rensel to be a treating source.

As noted above, the ALJ found that Davis has the severe impairment of multiple sclerosis.[84] The record shows that Davis was diagnosed with MS in 2008,[85] and in 2012

---

[81] *Id*.

[82] Tr. at 422, 423, 425.

[83] *Id*. at 454.

[84] *Id*. at 55.

[85] *Id*. at 350.

began a series of examinations, treatments and evaluations by physical therapists,[86] psychological consultants[87] and ophthalmologists[88] related to symptoms of MS. In 2013, she continued with additional physical therapy for the MS,[89] as well as received treatment in an emergency room for an MS exacerbation[90] and from Dr. Rober Barnett, M.D., for complaints of headaches and chronic fatigue.[91] Davis was again treated in an emergency room in 2014 for a reaction to her MS medication.[92]

Davis was also examined by Dr. Rensel in 2014, who then completed the functional capacity opinion that is now at issue. In finding that the portion of that opinion dealing with the need for unscheduled breaks was entitled to only very little weight, the ALJ cited first to the fact that Dr. Rensel's opinion was based on the earlier functional capacity opinion of physical therapist Richard Sutliff, which the ALJ stated was merely "[un]equivocal [sic]."[93]

---

[86] *Id*. at 408, 409-10.

[87] *Id*. at 360, 363, 108, 123, 126-27, 110-11, 124-25.

[88] *Id*. at 431, 433, 434, 436, 437, 439, 440, 444, 447, 449, 467, 469, 451, 452.

[89] *Id*. at 454-58, 421-23.

[90] *Id*. at 372-73, 377.

[91] *Id*. at 462-64.

[92] *Id*. at 534-35.

[93] The ALJ clearly meant "equivocal" instead of "unequivocal" in his opinion. As the use of the word unequivocal in direct contrast to the point that he is making. *Id*. at 61.

The ALJ further found that there was nothing in the record to support Dr. Rensel's opinion that Davis would need additional unscheduled breaks in the work day.[94]

As to the functional capacity evaluation completed by the physical therapist in 2013, the "equivocal" nature of the results was based on the fact that Davis did not complete all aspects of the scheduled tests.[95] To that point, therapist Sutliff noted that "I have little doubt that [Davis] has legitimate functional deficits, but her lethargic movement patterns created invalid results on timed-tests, OHM tests, and non-material handling tests that do not accurately reflect her true abilities."[96] Thus, the report of these 2013 tests is consistent with the conclusion that Davis does have functional deficits, but does not of itself delineate the precise extent of those deficits, nor definitively refute any other assessment of such deficits.

The only time Dr. Rensel cited to this 2013 functional capacity report was for the limited purpose of providing evidence how much weight Davis could be expected to lift.[97] Contrary to the suggestion by the ALJ that Dr. Resnel's 2014 opinion was an inappropriate "affirm[ation] of the findings from [Davis's] January 16, 2013 functional capacity assessment,"[98] which findings were considered equivocal,[99] Dr. Rensel made no such

---

[94] *Id.*

[95] *Id.* at 626.

[96] *Id.*

[97] *Id.* at 610.

[98] *Id.* at 61.

[99] *Id.*

-17-

wholesale adoption of the 2013 functional evaluation, but specifically cited without additional comment to that portion of the actual 2013 findings documenting that Davis's capacity to lift could not be quantified at that time.[100]  As such, there is nothing imprecise, improper or invalidating in Dr. Rensel's limited use of the 2013 record in this way.

More important, downgrading the weight given to Dr. Rensel's opinion as to unscheduled breaks for the reason that "there is nothing in the record"[101] to support that view is plainly not a good reason. In fact, the record, as partially recounted above, contains treatment notes from Dr. Barkett in 2013 noting "chronic fatigue,"[102] "chronic daily fatigue"[103] and "chronic fatigue."[104]  In addition, the 2013 functional capacity assessment, described above, also contains a fatigue severity score of 6 out of 7, and a modified fatigue impact scale score of 60/84, which indicates "maximal" fatigue.[105] Further, as also discussed, that same 2013 assessment makes reference to "overt lethargy,"[106] Davis as being

---

[100] *Id*. at 627.

[101] *Id*. at 61.

[102] *Id*. at 464.

[103] *Id*. at 463.

[104] *Id*. at 462.

[105] *Id*. at 626.

[106] *Id*. at 625.

-18-

"lethargic,"[107] and that Davis was "excessively lethargic,"[108] observations that are supportive of Dr. Rensel's opinion as to the need for unscheduled breaks. Moreover, given that Dr. Rensel is a treating source, and also a specialist in treating MS,[109] a proper evaluation of her opinion would involve according it at least the presumption of great weight as the functional opinion of a qualified treating source within the area of specialization where that opinion is consistent with not only the other evidence of record, but also with the fact that fatigue is a very common symptom of MS,[110] often to the point of being disabling.[111]

In addition to not properly analyzing the opinion of Dr. Rensel, as detailed above, I also note that the ALJ improperly elected adopt the functional limitations of Dr. Lynne Torello, M.D.,[112] who rendered her opinion in early 2013, or more than a year before Dr. Rensel.[113] As such, Dr. Torello did not review the opinion of Davis's treating physician, Dr.

---

[107] *Id*. at 626.

[108] *Id*.

[109] The treatment notes show that Dr. Rensel is part of the Mellen Center at the Cleveland Clinic (*see, id.* at 612) which is "one of the largest and most comprehensive programs for MS care and research worldwide." http://my.clevelandclinic.org/services/neurological_institute/mellen_center_multiple_sclerosis

[110] http://www.mayoclinic.org/diseases-conditions/multiple-sclerosis-causes/dxc20

[111] http://www.nationalmssociety.org/symptoms-diagnoses/MS-symptoms

[112] Tr. at 60.

[113] *Id.* at 126.

Rensel, nor consider the evidence in the extensive functional evaluation of January 2013 and other subsequent evidence.

While it is possible that the functional opinion of a non-treating source may be given greater weight than that of a treating one, great care must be taken that the non-treating opinion is based on substantially the same evidentiary foundation, or a better one, as the treating source opinion, or is in some other way clearly more indicative of the functional limitations of the claimant. Plainly, that was not the case here.

## Conclusion

Accordingly, for the reasons stated, I find that the decision of the Commissioner denying Joyce Davis's application for benefits is not supported by substantial evidence. Therefore, that decision is here reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: January 30, 2017            s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge